Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4245 | **DATE** | 3/12/2002 |
| **CASE TITLE** | ELIZABETH PUTNAM vs. EMPRESS CASINO JOLIET CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Empress Casino Joliet Corporation's motion for summary judgment [13-1] is granted as to Counts II and IV, granted in part and denied in part as to Count III and denied as to Count I. Joint modified pretrial order shall be presented on March 28, 2002 at 9:00 a.m. Plaintiff's draft shall be submitted to defendant by March 20, 2002. Bench trial is set on April 18, 2002 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 19 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 3/13/2002 | |
| | | | date mailed notice | |
| CB | courtroom deputy's initials | 02 MAR 13 AM 10:40 | CB | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIZABETH PUTNAM )
)
Plaintiff, ) No. 01 C 4245
)
v. ) Suzanne B. Conlon, Judge
)
EMPRESS CASINO JOLIET CORP. )
)
Defendant. )

**DOCKETED**

**MAR 19 2002**

## MEMORANDUM OPINION AND ORDER

Elizabeth Putnam ("Putnam") sues Empress Casino Joliet Corporation ("Empress") for personal injuries sustained during her employment aboard an Empress casino river boat. Specifically, Putnam alleges negligence under the Jones Act ("Jones Act"), 46 U.S.C. § 688 *et seq.* (Count I), unseaworthiness of the casino under general admiralty and maritime law (Count II) and maintenance and cure under general admiralty and maritime law (Count III) and the Jones Act (Count IV). Empress moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Both parties have failed to adhere to those procedures. Local Rule 56.1 requires both the moving and non-moving parties to submit a statement of material facts, including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). Evidence submitted at summary judgment must be admissible at trial under the Federal Rules of Evidence. *Woods v. City of Chicago*, 234 F.3d 979,

1

988 (7th Cir. 2000). All facts not properly supported by the record evidence must be disregarded. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

Paragraphs 72, 79, 80, 84 and 195 of Putnam's statement of facts are premised on inadmissible hearsay. Inadmissible hearsay cannot be considered on summary judgment. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 741 (7th Cir. 1997).

In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true. Local Rule 56.1(b)(3)(B); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000).

Putnam's responses to several paragraphs, including paragraphs 7, 15, 18 and 20, fail to cite to record evidence supporting her denials. Accordingly, Empress' factual statements are deemed admitted to the extent that Putnam's denials fail to comply with Local Rule 56.1.

Local Rule 56.1 also requires the moving party to submit a reply to the non-moving party's statement of material facts in the form prescribed by Local Rule 56.1(b)(3)(A). Local Rule 56.1(a). All relevant facts denied without supporting documentation must be accepted as true. Local Rule 56.1(a); *Jupiter Aluminum*, 225 F.3d at 871.

Empress' responses to paragraphs 26, 31, 35, 41, 48, 187, 209, 214-217, 222 and 226 fail to cite to record evidence supporting its denials. Indeed, Empress does not respond at all to numerous paragraphs, including paragraphs 25, 27-30, 32-34, 36-40, 42-46, 50, 57-58, 62-63, 65-71, 75-76, 88, 152-154, 157, 160, 162-165, 179, 205-206, 208, 219-220 and 223-225. Accordingly, Putnam's

2

factual statements are deemed admitted to the extent that Empress failed to comply with Local Rule 56.1.

## II. Facts

The following facts are undisputed. Empress operates a casino upon navigable waters in Joliet, Illinois. In December 1992, Empress hired Putnam as a dealer. Putnam's supervisors were responsible for assigning her to specific games during a shift. Putnam did not have any input into the decision. Putnam worked full-time until September 1996, when she began working only part-time on the weekends due to family reasons.

In June 1998, Putnam experienced soreness in her upper right forearm while dealing blackjack. Dealing blackjack requires repeated movements of the arms and wrists. Putnam asked her supervisor, John Crandall, if she could be assigned to a different game because her arm was sore. Crandall declined Putnam's request.

The next weekend, Putnam was dealing roulette. Putnam was required to spin the ball and pay the winning bets ("spin side") as well as collect the losing bets ("mucking"). Empress often assigned one dealer to work the spin side of roulette with another dealer handling the mucking duties.

In order to spin the ball, Putnam first had to start the wheel spinning by pulling a slot on the wheel. Once the wheel was spinning, Putnam would snap her wrist down and under to send the ball spinning along the edge of the wheel. Both parties agree the roulette equipment functioned properly.

During her shift, Putnam felt pain in her right arm from the back of her shoulder into her index finger and thumb. Putnam felt the most pain while she was spinning the ball. Putnam immediately asked Crandall if she could be assigned to a mucking position. Crandall declined

3

Putnam's request, explaining that there were not enough dealers working that day to allow her to only perform mucking duties. Approximately three hours into her shift, Putnam's arm was heavy, weak and numb. Putnam had not experienced numbness or tingling in her arm prior to June 6, 1998.

Putnam left work early to see a doctor. The doctor restricted Putnam to light duty. Empress paid Putnam maintenance, a per diem living allowance under general admiralty and maritime law, in the amount of $17.00 for June 7, 1998. On June 8, 1998, Empress offered Putnam a light duty position during the week consistent with her medical restrictions. Putnam rejected the offer. Thereafter, Empress did not pay Putnam maintenance.

Putnam was referred to an orthopedic specialist, Dr. William Farrell, for treatment. Dr. Farrell continued Putnam's work restrictions. Dr. Farrell also ordered an MRI, which revealed a narrowing of the neuroforamen, or opening where the nerve roots pass down to the arm, at the cervical 4-5 level on the right side. Dr. Farrell found the narrowing at cervical 4-5, rather than at cervical 4-6, was inconsistent with the dermatomal level described by Putnam beyond her mid-arm. The MRI was otherwise normal.

As part of Putnam's treatment, Dr. Farrell prescribed physical therapy. Between June 22, 1998 and August 3, 1998, Putnam attended eight physical therapy sessions. Dr. Farrell reviewed the physical therapy report finding that Putnam continued to experience tenderness around the right shoulder blade and right upper trapezius muscle. Otherwise, Putnam was physically normal.

When Putnam informed Dr. Farrell that she still experienced pain, Dr. Farrell ordered a nerve conduction test known as an EMG. The EMG returned to Dr. Farrell was normal. On or about September 10, 1998, Putnam once again informed Dr. Farrell she still experienced pain. Dr. Farrell referred Putnam to a neurosurgeon for a second opinion.

About this time, Dr. Farrell determined Putnam had reached "maximum medical improvement," also referred to as "maximum cure." On September 11, 1998, Dr. Farrell released Putnam to return to work without restrictions. Empress requested Putnam to return to work. Putnam declined due to the pain in her arm. Prior to her release, Empress paid the costs associated with Putnam's medical treatment.

Thereafter, Putnam went to the neurosurgeon Dr. Farrell referred for a second opinion. The neurosurgeon did not place any restriction on Putnam returning to work.

Putnam returned to Dr. Farrell in July 1999, still complaining of pain. Dr. Farrell referred Putnam to a pain management center for treatment. Putnam was treated by Dr. Gorski and Dr. Hashim. Neither Dr. Gorski nor Dr. Hashim placed any restriction on Putnam returning to work.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return

5

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. Negligence Under the Jones Act

Any seaman who suffers a personal injury in the course of employment may bring an action for damages against the shipowner under the Jones Act. 46 U.S.C. § 688(a). In order to prevail, the seaman must show her injuries resulted "in whole or in part from the negligence of any of the officers, agents, or employees of [the shipowner]." 45 U.S.C. § 51. Specifically, Putnam must show: (1) personal injury in the course of her employment; (2) negligence by her employer; and (3) causation to the extent that her employer's negligence was the cause "in whole or in part" of her injury. *Knight v. Grand Victoria Casino*, No. 98 C 8439, 2000 WL 1434151, at *3 (N.D.Ill. Sept. 27, 2000), *citing Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 436 (4th Cir. 1999); *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997)(*en banc*). Although Empress does not dispute that Putnam was injured in the scope of her employment, Empress claims summary judgment is appropriate because Putnam cannot establish the second and third elements of her claim.

### A. Foreseeability

Empress first argues it was not negligent in assigning Putnam to the spin side of roulette. A Jones Act employer owes a duty to assign employees to work for which they are reasonably suited. *Moreno v. Grand Victoria Casino*, 94 F.Supp.2d 883, 895 (N.D.Ill. 2000), *citing Fletcher v. Union Pacific Railroad Co.*, 621 F.2d 902, 909-10 (8th Cir. 1980). The employer breaches that duty if it negligently assigns an employee to perform work beyond his or her capacity. *Id.* The employer is negligent if it knew or should have known that its assignment exposed the employee to an unreasonable risk of harm. *Id.*

Crandall knew Putnam was experiencing pain in her arm from dealing. Crandall, as a supervisor, had the sole authority to modify Putnam's assignment. Nevertheless, Crandall denied Putnam's requests for reassignment. Under these circumstances, a reasonable factfinder could conclude the risk of injury was foreseeable to Empress. *See Moreno*, 94 F.Supp.2d at 894 (foreseeability must be determined by the factfinder where "the proofs justify with reason the conclusion that employer negligence played any part . . . in producing the injury or death for which damages are sought"). The cases cited by Empress do not change this conclusion. *See Lindemann v. Empress Casino Hammond Corp.*, No. 97 C 8938, 1999 WL 59839, at *4 (N.D.Ill. Jan. 27, 1999)(summary judgment granted where employee failed to offer any evidence that injuring task was required); *Brantley v. Hollywood Casino-Aurora, Inc.*, No. 96 C 2082, 1998 WL 513089, at *3-4 (N.D.Ill. Aug. 14, 1998)(same); *Rutherford v. Lake Michigan Contractors, Inc.*, No. 00-1850, 2002 WL 22352, at *2-3 (6th Cir. Jan. 7 2002)(summary judgment affirmed where employee failed to offer evidence that employer knew of prior complaints of possible injury). *See also Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 61-62 (5th Cir. 1982)(verdict for employee reversed where employee, who had not previously complained of injury, hurt his back completing voluntary task).

## B. Causation

Without citing any authority, Empress next argues Putnam cannot establish causation between her injury and her work assignment. Under the Jones Act, the plaintiff's burden to prove causation is "very light" and has been described as "featherweight." *Cella v United States*, 998 F.2d 418, 427-28 (7th Cir. 1993). Therefore, a plaintiff need only establish that the employer's acts or omissions played some part, no matter how small, in producing the employer's injury. *Id.* at 428.

7

Based on this standard, Putnam has advanced sufficient evidence to establish that Crandall's failure to reassign her played some part in causing her injury. *See also Moreno*, 94 F.Supp.2d at 893, *quoting Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 772 (9th Cir. 1981)(summary judgment in Jones Act cases is to be "cautiously granted, and if there is to be error at the trial level it should be in denying summary judgment in favor of a full live trial").

## III. Unseaworthiness Under General Admiralty and Maritime Law

Empress moves for summary judgment on Putnam's unseaworthiness claim. Putnam failed to respond. Nevertheless, the court must examine the undisputed facts of the claim to determine if summary judgment is appropriate as a matter of law. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n. 9 (7th Cir. 1996).

Under general admiralty and maritime law, Empress has an absolute duty to provide a seaworthy vessel. *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960). A vessel is seaworthy if it, its appurtenances, and its crew are reasonably fit for their intended use or service. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).

The parties agree the roulette equipment functioned properly. Moreover, a single act of incompetence by a crew member cannot render a vessel unseaworthy unless the crew member's incompetence is part of a continuous course of conduct. *Usner*, 400 U.S. at 500 ("To hold that [an] individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions"). Crandall's failure to reassign Putnam on two occasions falls short of establishing a continuous course of conduct. Summary judgment is appropriate on Count II.

## IV. Maintenance and Cure Under General Admiralty and Maritime Law

Maintenance and cure are "rights given to seamen as incidents of their employment." *Knight*, 2000 WL 1434151, at *5, *quoting Mullen v. Fitz Simons & Connell Dredge & Dock Co.*, 191 F.2d 82, 85 (7th Cir. 1951). "Maintenance" is a per diem living allowance and "cure" is the right to necessary medical services. *Smith v. Apex Towing Co.*, 949 F. Supp. 667, 670 (N.D.Ill. 1997), *citing Pelotto v. L & N Towing Co.*, 604 F.2d 396, 399 (5th Cir. 1979). *Id.* Maintenance and cure must be paid until maximum cure is achieved regardless of the cause of the injury. *Id.*

### A. Maintenance

Empress claims it was not obligated to pay maintenance, with the exception of the $17.00 payment on June 7, 1998, because Putnam failed to mitigate her damages by accepting the light duty position offered by Empress on June 8, 1998. As an initial matter, Empress failed to plead this affirmative defense in its answer. *See* Fed. R. Civ. P. 8(c); *Venters v. City of Delphi*, 123 F.3d 956, 967-68 (affirmative defenses not pled in the answer are waived). Nevertheless, Putnam may recover for maintenance and cure without any deduction for earnings subsequent to the injury. *See Vaughan v. Atkinson*, 369 U.S. 527, 533 (1962)("It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings"). Empress' obligation to pay Putnam maintenance until maximum cure was not affected by Putnam's refusal to accept the light duty position.

### B. Cure

Empress next claims its obligation to pay cure ceased upon Dr. Farrell's finding of maximum cure on September 11, 1998. Maximum cure is achieved "where it appears that the seaman's

9

condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition." *Watson v. Hollywood-Casino-Aurora, Inc.*, No. 95 C 0654, 1998 WL 417594, at *3 (N.D.Ill. July 20, 1998), *citing Pelotto*, 604 F.2d at 400.

Putnam does not provide evidence disputing Dr. Farrell's determination of maximum cure on September 11, 1998. For example, Putnam does not provide admissible evidence regarding her physical condition after September 11, 1998. Indeed, Putnam did not even visit a doctor for treatment until she returned to Dr. Farrell in July 1999, once again complaining of pain. Dr. Farrell then referred Putnam to a pain management clinic. Based on the undisputed facts, Putnam achieved maximum cure on September 11, 1998. Empress paid Putnam's medical expenses until the date of maximum cure and is entitled to judgment as a matter of law on Putnam's cure claim.

## V. Maintenance and Cure Under The Jones Act

In order to state a claim for maintenance and cure under the Jones Act, a plaintiff must prove that a personal injury was caused or aggravated by the employer's failure to provide maintenance and cure. *Watters v. Harrah's Illinois Corp.*, 993 F. Supp. 667, 670 (N.D. Ill. 1998), *citing Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995)(*en banc*). Putnam does not allege any additional injuries resulting from Empress' failure to provide maintenance. Accordingly, Putnam's claim for maintenance and cure under the Jones Act fails as a matter of law.

## VI. Statute of Limitations

Not until its reply does Empress argue Putnam's claim is barred by the three year statute of limitations. Empress fails to explain why this issue was not raised in its opening brief, especially when Empress pled the statute of limitations as one of its affirmative defenses at the outset of the case. Under these circumstances, the court will not consider an issue raised for the first time in a

reply brief. *See Native American Arts, Inc. v. Earth Dweller, Ltd.*, No. 01 C 2370, 2001 WL 910394, at *5 (N.D.Ill. Aug. 10, 2001).

## CONCLUSION

Empress is entitled to judgment as a matter of law on Counts II and IV. Empress also is entitled to judgment as a matter of law on Putnam's claim for cure in Count III. Empress' motion for summary judgment as to the remaining claims is denied.

March 12, 2002

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge